224 P.3d 410 (2009)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of N.D.V., a Child, and Concerning Y.R., Respondent-Appellant.
No. 09CA0522.
Colorado Court of Appeals, Div. IV.
December 17, 2009.
*413 Hal Warren, County Attorney, Julie Thomerson, Assistant County Attorney, Denver, Colorado, for Petitioner-Appellee.
Leta Brandes, Guardian Ad Litem.
Carl F. Blair, Jr., Littleton, Colorado, for Respondent-Appellant.
Opinion by Judge CARPARELLI.
Y.R. (mother) appeals from the judgment terminating the parent-child relationship between her and her son, N.D.V. We affirm.
Mother presents issues related to
 the failure to adjudicate the child's status as neglected or dependent;
 the reasonableness of efforts made to rehabilitate her;
 the findings that she is unfit and unlikely to change within a reasonable time; and
 the availability of less drastic alternatives.

I. Procedural History
On June 14, 2007, mother appeared with counsel at the adjudicatory hearing, and, according to the register of actions, was advised of her rights. She admitted the child was neglected or dependent and waived proof of a factual basis that the child was homeless, without proper care, or not domiciled with mother through no fault of mother. The court accepted mother's admission, and, at mother's request, deferred entry of the order of adjudication and continued the hearing as permitted under section 19-3-505(5), C.R.S. 2009. On the same date, as permitted in such circumstances and without objection from mother or the guardian ad litem (GAL), the court adopted a treatment plan for mother.
In August, September, and November 2007, and in January, March, April, and May 2008, the court entered various orders regarding custody and placement of the child and regarding mother's treatment plan. Mother and the GAL participated in each of those proceedings without objection.
The department filed a motion to terminate mother's parental rights on June 6, 2008. Although the court had not yet entered an adjudicatory order, the petition stated that the child had been adjudicated neglected or dependent on June 14, 2007. Nothing in the record indicates that mother or the GAL denied or objected to this erroneous assertion. Deferral of the adjudication expired on June 14, 2008. On September 3, 2008, the court denied, without prejudice, the department's motion to terminate, finding that the department had not sustained its burden by clear and convincing evidence.
The department filed a second motion to terminate mother's parental rights on November 6, 2008. The court conducted a four-day termination hearing beginning on February 19, 2009, during which mother did not deny the allegation that the child's status had been adjudicated in June 2007, seek to withdraw her admission, object to the proceedings, or demand that the court either dismiss or sustain the petition in neglect or dependency before conducting further proceedings.
As a result of the hearing, the court terminated mother's parental rights, finding, among other things, that the child had been adjudicated dependent or neglected as to mother on June 14, 2007.

II. Jurisdiction
Based on these facts, which mother does not dispute, she first contends that
 Section 19-3-604(1)(a)-(c), C.R.S. 2009, establish subject matter jurisdictional requirements and the court's failure to satisfy those requirements deprived the court of jurisdiction to enter a termination order;
 under section 19-3-505(5), upon expiration of the statutorily permitted period to defer entry of an adjudicatory order, the court was without authority to engage in any action other than to dismiss or sustain *414 the department's petition in neglect or dependency; and
 because the court did not enter an adjudicatory order, section 19-3-505(5) serves as a jurisdictional bar to further proceedings under the petition.
We conclude that, under section 19-1-104(1)(b), C.R.S.2009, a juvenile court's subject matter jurisdiction in neglect or dependency cases is based on the fact of the child being neglected or dependent. Here, mother admitted that fact, and the court's acceptance of her admission established the essential factual predicate for the court's exercise of its jurisdiction. Although the court did not enter an order sustaining the petition, its failure to do so did not divest the court of jurisdiction. Because the court's failure to enter an adjudicatory order did not deprive it of jurisdiction and mother failed to raise these contentions in the trial court, any procedural error has been waived.

A. Subject Matter Jurisdiction Not Waivable
Although a party is generally precluded from raising an issue on appeal when there was no objection at trial, "a challenge to a court's subject matter jurisdiction is not waivable, and may be raised for the first time on appeal." Herr v. People, 198 P.3d 108, 111 (Colo.2008); see also Kirbens v. Martinez, 742 P.2d 330, 334 n. 8 (Colo.1987). "Subject matter jurisdiction `concerns the court's authority to deal with the class of cases in which it renders judgment.'" People in Interest of Clinton, 762 P.2d 1381, 1386 (Colo.1988) (quoting In re Marriage of Stroud, 631 P.2d 168, 170 (Colo.1981)).
Once a court obtains subject matter jurisdiction, "a later failure to follow statutory requirements does not divest the court of subject matter jurisdiction. Such a failure to follow the statute would amount to an erroneous decision not affecting jurisdiction." Interest of Clinton, 762 P.2d at 1387.

B. Statutory Interpretation
Our primary task in construing a statute is to give effect to the intent of the General Assembly. Williams v. Kunau, 147 P.3d 33, 38 (Colo.2006). When reviewing any provision of a statute, we consider the statutory scheme as a whole to give consistent, harmonious, and sensible effect to all its parts, give words and phrases their plain and ordinary meaning, and resort to principles of construction only when a statute is ambiguous. Farmers Reservoir & Irrigation Co. v. City of Golden, 113 P.3d 119, 130 (Colo.2005); Bd. of County Comm'rs v. Costilla County Conservancy Dist., 88 P.3d 1188, 1192-93 (Colo.2004). We may not adopt a construction that renders any word superfluous. Although not dispositive, we may also consider the title of a statute in ascertaining its meaning. People v. Madden, 111 P.3d 452, 457 (Colo.2005).
Statutory language that establishes the scope of a court's jurisdiction necessarily delimits that jurisdiction. See Levin v. Anouna, 990 P.2d 1136, 1138 (Colo.App. 1999). Accordingly, the supreme court has held that "the basis for the exercise of judicial authority is normally found in jurisdictional statutes, not in the language of procedural rules." Interest of Clinton, 762 P.2d at 1388 (quoting White v. District Court, 695 P.2d 1133, 1135 (Colo.1984)). In addition, language in a statute requiring that a particular procedure be followed "does not amount to a subject matter jurisdictional requirement unless it is clear that the General Assembly so intended it." Eagle Peak Farms, Ltd. v. Lost Creek Ground Water Mgmt. Dist., 7 P.3d 1006, 1010 (Colo.App.1999). An error in procedure does not implicate the court's jurisdiction unless it results in a court's attempt to exercise power over a class of cases or over persons not within its constitutional or statutorily prescribed authority. Levin, 990 P.2d at 1138.

C. Status of the Child as Neglected or Dependent Confers Jurisdiction
With regard to proceedings in neglect or dependency, the General Assembly has declared that, to carry out the purposes of the Children's Code, its provisions must be liberally construed to serve the welfare of children and the best interests of society. § 19-1-102(2), C.R.S.2009.
*415 As pertinent here, the juvenile divisions of district courts outside the City and County of Denver and the Denver Juvenile Court have exclusive original jurisdiction in proceedings concerning any child who is neglected or dependent. §§ 19-1-103(70), 19-1-104(1)(b). The General Assembly explicitly granted this authority in section 19-1-104(1)(b), which states as follows:
Jurisdiction. (1) Except as otherwise provided by law, the juvenile court shall have exclusive original jurisdiction in proceedings:
...
(b) Concerning any child who is neglected or dependent, as set forth in section 19-3-102.
This provision explicitly premises subject matter jurisdiction on whether the child "is neglected or dependent," which presents an issue of fact. Section 19-1-104 also grants the juvenile court jurisdiction to determine the legal custody of any child who comes within its jurisdiction under this section, to terminate the legal parent-child relationship, to conduct proceedings concerning any adult who allegedly neglects a child who comes within its jurisdiction under this section, and to issue temporary orders providing for the child's custody, protection, support, and medical, psychological, and dental treatment. § 19-1-104(1)(c)-(d), (2), (3)(a), C.R.S. 2009.
The General Assembly again explicitly addressed jurisdiction in section 19-3-505(1), C.R.S.2009, stating that the age and residence of the child are jurisdictional matters. Thus, in accordance with section 19-3-502(2), C.R.S.2009, the petition invoking the court's exercise of its jurisdiction over dependency and neglect matters must state the name, age, and residence of the child and the names and residences of the child's parents. These allegations are essential to invoke the court's jurisdiction because they allege essential jurisdictional requirements: that the person who is the subject of the neglect or dependency proceedings is younger than eighteen years old as required by the Children's Code and that the person is within the geographic jurisdiction of the court.
In addition to these requirements, the petition must also plainly allege facts that "bring the child within the court's jurisdiction." § 19-3-502(2). This phrase necessarily refers to facts satisfying the jurisdictional requirement stated in section 19-1-104(1)(b) that the child is neglected or dependent. The parent may either deny the facts alleged in the petition and require the county department of social services to prove the child is neglected or dependent, or waive proof of facts and admit the petition. C.R.J.P. 4.2(b)-(c), 4.3.
Under section 19-3-102(1)(e), C.R.S.2009, a child is neglected or dependent when he or she is homeless, without proper care, or not domiciled with his or her parent through no fault of the parent. The supreme court has explained that "[t]he status of being a neglected or dependent child triggers juvenile court jurisdiction over a child so circumstanced in Colorado." People in Interest of A.M.D., 648 P.2d 625, 639-40 (Colo.1982) (emphasis added); see also E.P. v. District Court, 696 P.2d 254, 258-59 (Colo.1985) (child's presence in Colorado triggers jurisdiction).
Mother's reliance on People in Interest of K.S., 33 Colo.App. 72, 75, 515 P.2d 130, 132 (1973), is misplaced. Citing K.S., mother asserts that "[t]he primary purpose of a dependency adjudication is to furnish the jurisdictional bases for state intervention." Although we find no such holding in that case, mother's argument is supported by language in A.M.D., 648 P.2d at 640. But there, the juvenile court had entered an adjudicatory order. Consequently, the supreme court was not required to decide whether section 19-3-505(5) clearly expresses the General Assembly's intention that the requirements of that section amount to subject matter jurisdictional requirements or that whether a court's failure to comply with section 19-3-505(5) results in a court's attempt to exercise power over a class of cases or persons not within its statutorily prescribed authority. Nor was the supreme court required to decide whether a court's acceptance of a parent's admission that the child is neglected or dependent provides a jurisdictional basis under section 19-1-104(1)(b) for state intervention into the parent-child relationship absent an adjudicatory order.
*416 In sum, section 19-1-104(1)(b) bases jurisdiction on the fact of the child's status as neglected or dependent. The supreme court has stated that the status of being a neglected or dependent child triggers juvenile court jurisdiction over the child. And the child's status may be determined based on proof by a preponderance of the evidence or by a parent's admission regarding the child's status. Therefore, we conclude that where a parent admits that the child is neglected or dependent under the applicable statutes, the court's acceptance of the admission provides the statutorily required jurisdictional basis for further proceedings.

D. Section 19-3-604(1)(c) Is Not Jurisdictional
Mother first contends that subsections (1)(a) through (c) of section 19-3-604 are jurisdictional. She argues that they require "an adjudication of dependency and neglect before a termination order may enter." We disagree. Because mother's parental rights were terminated under section 19-3-604(1)(c), we consider the requirements of that subsection only and conclude the absence of an order of adjudication was not jurisdictional.
Mother admitted the child was neglected or dependent with regard to her. She does not contend on appeal that the court erred when it accepted her admission. She never sought to withdraw this admission nor does she or the GAL contend on appeal that the child was not neglected or dependent throughout the proceedings. Mother did not dispute the allegations in the department's motions to terminate that the child had been adjudicated neglected or dependent as to her.
Section 19-3-604 is captioned "Criteria for Termination." Section 19-3-604(1) permits a court to "order a termination of the parent-child legal relationship upon the finding by clear and convincing evidence" that specified facts exist. Here, the court terminated mother's parental rights under section 19-3-604(1)(c). Subsection (1)(c) requires a finding that "the child is adjudicated dependent or neglected." and that certain other conditions exist. (Emphasis added.) It does not refer back to section 19-3-505 or require the court to find that an order adjudicating the child had been previously entered, either in compliance with that section or otherwise.
On its face, section 19-3-604 does not purport to be a jurisdictional statute. Instead, it establishes criteria for termination. Thus, section 19-3-604(1)(c) does not clearly reflect a legislative intention that entry of an adjudicatory order serve as a subject matter jurisdictional requirement. Nor would an error in applying the criteria in such circumstances result in an attempt to exercise power over a class of cases or persons not within the court's constitutional or statutorily prescribed authority. See Levin, 990 P.2d at 1138. Instead, the language of section 19-3-604(1)(c) permits the court to find that the child "is adjudicated dependent or neglected." (Emphasis added.) Indeed, this phrase implies that the court may conclude that the child is neglected or dependent as part of its findings regarding termination.
Considering the statutory scheme as a whole, noting that section 19-3-604(1)(c) does not clearly reflect a legislative intent to create a jurisdictional requirement, and construing this provision to serve the welfare of children and the best interests of society, we conclude that the requirements of section 19-3-604(1)(c) are not jurisdictional.
Because we have concluded that the court's failure to enter an adjudicatory order was not an error affecting jurisdiction and mother voluntary participated in two termination proceedings without objecting to the absence of an adjudicatory order, we further conclude that mother has waived any procedural error arising from section 19-3-604(1)(c).[1]

E. Lack of Adjudicatory Order Did Not Divest the Court of Jurisdiction
Mother's second contention is that the trial court could not properly hold a termination hearing without an adjudication as prescribed by section 19-3-505(5). To the extent mother contends section 19-3-505(5) establishes *417 a limit on the court's jurisdiction, we disagree. That provision does not purport to address subject matter jurisdiction and does not clearly reflect a legislative intention that entry of an adjudicatory order serve as an additional jurisdictional requirement or that lack of such an order divest the court of jurisdiction after the child's status as neglected or dependent has been established by a parent's admission and a court's acceptance of that admission.[2] Consequently, any error in conducting the termination hearing without first entering an adjudicatory order would have been procedural, and because mother did not raise the issue in the trial court, she has waived it. To the extent that mother contends that section 19-3-505(5) establishes a procedural prerequisite to conducting a termination hearing, we conclude that she has waived the issue.

1. Law
To establish that a child is neglected or dependent, the department must allege facts that, if true, would support a finding of neglect or dependency under the criteria in section 19-3-102, C.R.S.2009. See §§ 19-3-501, -502, -505(5), (6), (7)(a), C.R.S.2009. Section 19-3-505(3), C.R.S.2009, requires juvenile courts to conduct adjudicatory hearings within sixty days of service of the petition pertaining to a child younger than six years old.
Section 19-3-505 is captioned "Adjudicatory hearingfindingsadjudication." The purpose of an adjudicatory hearing is to determine whether the allegations of a petition in dependency and neglect are supported by the evidence. § 19-1-103(3); see also People in Interest of E.A., 638 P.2d 278, 283 (Colo. 1981). At the hearing, the court must consider whether the allegations of the petition are supported by a preponderance of the evidence. § 19-3-505(1). As we have already noted, the parent may either deny the facts and require the department to prove the child is neglected or dependent, or waive proof of facts and admit the petition. C.R.J.P. 4.2(b)-(c), 4.3. But when a parent admits the allegations in a petition in neglect or dependency, the court may accept the admission after finding that (1) the parent understands his or her rights, the allegations contained in the petition, and the effect of the admission; and (2) the admission is voluntary. C.R.J.P. 4.2(c).
Section 19-3-505(7)(a) provides that, with one exception, after a court finds that the allegations of the petition have the requisite support, it must sustain the petition. In such circumstances, the statute does not give the court discretion to dismiss the petition. Section 19-3-505(7)(a) further provides that, after finding the petition is supported, the court must "make an order of adjudication setting forth whether the child is neglected or dependent." The only exception applies when, after finding the petition is supported, the court continues the case as permitted by section 19-3-505(5).
Section 19-3-505(5)(b) provides that, after finding that the allegations of the petition are supported, the court may defer entry of an adjudicatory order and "continue the hearing from time to time" if the continuance extends "no longer than six months without review by the court," and "[u]pon review, the court may continue the case for an additional period not to exceed six months, after which the petition shall either be dismissed or sustained." See also § 19-3-505(6), (7)(a).

2. Analysis and Conclusions
Mother did not, and does not now, contend that the petition failed to allege sufficient facts to support a finding of neglect or dependency under section 19-1-102. Indeed, she admitted the child was neglected or dependent and requested deferral of adjudication, which may be granted only after the court has found that the child's status as neglected or dependent has been established. As we have already concluded, establishing the child's status as neglected or dependent, in turn, establishes the court's jurisdiction under section 19-1-104(1)(b). And mother has not presented any basis to conclude that, under these circumstances, the court could *418 properly have concluded that the child was not neglected or dependent or dismissed the petition.
Section 19-3-505(5) does not purport to address subject matter jurisdiction, nor does it clearly reflect a legislative intention that entry of an adjudicatory order serve as a subject matter jurisdictional requirement. In addition, a court's failure to enter an adjudicatory order after accepting a parent's admission that his or her child is neglected or dependent as to that parent does not result in an exercise of power over a class of cases or persons beyond the court's statutory authority under section 19-1-104(1)(b). To the contrary, by authorizing courts to defer entry of an adjudicatory order and to proceed with the action in the absence of such an order, section 19-3-505(5) confirms that proof of the child's status establishes the court's jurisdiction in the matter and the court's "later failure to follow statutory requirements does not divest the court of subject matter jurisdiction." Interest of Clinton, 762 P.2d at 1387.
Unlike the dissenting opinion, we do not perceive the General Assembly's grant of authority in section 19-3-505(5) to continue "the hearing" and to continue "the case" as clear reflections of a legislative intention to divest juvenile courts of jurisdiction in proceedings in which it is undisputed that the child is neglected or dependent.
Nor are we persuaded that the decision in People in Interest of U.S., 121 P.3d 326, 328 (Colo.App.2005), addresses the question of whether section 19-3-505(5) reflects a clear legislative intent regarding subject matter jurisdiction. There the mother denied the child was neglected or dependent and the jury found that the petition's allegations against her were not sustained by the evidence presented at the hearing. In that context, the division held that the noncustodial father's no fault admission was an insufficient basis to sustain a dependency and neglect adjudication as to mother.
Accordingly, we conclude that when, as here, a court accepts a parent's admission that the child is neglected or dependent, the child's status is established and the court has jurisdiction to conduct further proceedings. If, thereafter, the court fails to enter an adjudicatory order so reflecting as statutorily required, the court does not lose jurisdiction in the matter.[3]
To the extent mother asserts on appeal that the court erred when it conducted the termination hearing without first entering an adjudicatory order, she does so for the first time. Because any error was not jurisdictional and mother did not preserve the issue of a procedural error for appellate review, she has waived it.

III. Unfitness
Mother asserts the trial court erred in finding that she was an unfit parent. We disagree.
An unfit parent is one whose conduct or condition renders him or her unable to give a child reasonable parental care. The reasonable parental care standard requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, emotional, and mental health needs. People in Interest of A.J., 143 P.3d 1143, 1152 (Colo.App.2006).
Here, three-month-old N.D.V. and his six-year-old stepbrother were removed after mother threatened to kill herself and the children because she was angry with father. The trial court determined that mother was unfit because it could not ensure that N.D.V. would be safe in her care. This finding is supported by the following testimony:
 Mother exercised unsupervised overnights with N.D.V. in the week before the child's skull was fractured;
 Mother was not able to protect the child from father and vacillated regarding father's responsibility for two unexplained fractures;
 Mother did not accept responsibility for the fact that the children had to be removed *419 or that N.D.V. could not be returned;
 Mother neglected to seek medical care for N.D.V. after she was advised of his forehead bruising and it was questionable whether she could meet his medical or emotional needs;
 Mother changed her story about the skull fracture and provided a new explanation seven months later; and the expert testified that mother's explanation would not account for that injury;
 Dr. Carol Marfut, who was appointed as mother's expert and conducted a parent-child interactional assessment in September 2008, testified that the child demonstrated distress upon seeing mother and lacked attachment to her, and that mother lacked empathy for the child and was unable to understand or read his cues;
 Dr. Tracy Hardister, who conducted a parent-child interactional assessment in January 2008, also questioned the child's attachment to mother.
When determining whether mother was a fit parent, the trial court was required to consider (1) the child's multiple injuries, one of which was life threatening; (2) mother's neglect in failing to obtain medical care for the child's forehead injury; and (3) the fact that the child was placed out of the home for seventeen months. See § 19-3-604(2)(d), (f), (k), C.R.S.2009. The determination of the credibility of the witnesses was also within the court's discretion. See K.D. v. People, 139 P.3d 695, 702 (Colo.2006).
Because each child is considered separately, the trial court was not precluded from terminating mother's parental rights as to N.D.V. simply because his older brother had been returned to her. See People in Interest of D.L.C., 70 P.3d 584, 588 (Colo.App.2003) ("A parent may be unfit as to one, but not all, of his or her children."). In this regard, the trial court stated that mother expressed emotional concern and empathy during testimony regarding the older child, but not as to N.D.V. The court also found with record support that the same protective concerns did not exist for the older child because he had a different father and, being of school age, was surrounded by statutorily mandated reporters who could ensure his safety.
Accordingly, because there is record support for the trial court's findings and conclusion, we will not reverse them. See K.D., 139 P.3d at 702.

IV. Reasonable Efforts
Mother asserts that the department failed to make reasonable efforts to rehabilitate her because it modified the prior plan to reunify N.D.V. with her and thereafter restricted visitation with him. We disagree.
The department must make "reasonable efforts" to prevent the placement of abused and neglected children out of the home and to reunify the family whenever appropriate. § 19-3-100.5(1), C.R.S.2009; see § 19-1-103(89), C.R.S.2009 ("Services provided by a county or city and county in accordance with section 19-3-208 are deemed to meet the reasonable effort standard described in this subsection (89)."); § 19-3-604(2)(h), C.R.S. 2009; L.L. v. People, 10 P.3d 1271, 1275 (Colo.2000); People in Interest of A.J.H., 134 P.3d 528, 533 (Colo.App.2006).
Here, the record shows that individual therapy was recommended and offered to mother at all times. She was aware of this counseling requirement as a result of her participation in progress meetings and court hearings, including the first termination hearing six months earlier. However, mother declined to follow the recommendation because she did not believe it was necessary to address her continuing anger and frustration.
The fact that N.D.V. suffered three unexplained injuries while in the care of his parents supported the decision to limit the length of mother's weekly visits with him, and the record does not show that mother requested expansion of those visits. Given those visits, Dr. Marfut was surprised at the child's lack of attachment to mother. Dr. Hardister recommended interactional therapy only if return of the child to mother was contemplated.
It was the trial court's responsibility to weigh the conflicting testimony and to determine whether the department's efforts to *420 reunify were reasonable in view of mother's failure to take any responsibility for N.D.V.'s placement or injuries. To the extent mother now claims that her relationship with the child was affected or prejudiced by only one-hour weekly visits, her failure to raise that issue in the trial court precludes her from doing so for the first time on appeal. See People in Interest of D.P., 160 P.3d 351, 355-56 (Colo.App.2007); People in Interest of A.W., 74 P.3d 497, 499 (Colo.App.2003).
We disagree with mother that the ruling in the recent case of People in Interest of M.M., 215 P.3d 1237 (Colo.App.2009), applies here. There, as mother quotes, the division ruled: "Due to the lack of a scientific basis and reliability, it is inappropriate for an expert witness to rely on polygraph results to form or render any opinions." M.M., 215 P.3d at 1250. Although the trial court had said it did not rely on the father's failed polygraphs, the division there reversed the termination of parental rights because it concluded that several experts had improperly relied on them in concluding that the father was a risk to his daughter.
Here, in contrast, the record does not show that the experts relied upon mother's failed polygraph. Instead, they questioned the child's attachment to mother and her ability to provide a safe environment for N.D.V. based on evidence other than the polygraph. Protective concerns remained in this case because mother never acknowledged the extent of the injuries that N.D.V. sustained, failed to seek appropriate medical care for him, and, for the first time seven months after the injury, offered an unlikely explanation for the skull fracture.
Thus, the record supports the trial court's finding that the department made reasonable efforts to rehabilitate mother.

V. Conduct or Condition Unlikely to Change
Mother asserts that the trial court erred in determining that no additional time would allow her to become fit. Again, we disagree.
In determining whether a parent's conduct or condition is unlikely to change within a reasonable time, the trial court may consider the parent's social history, the chronic or long-term nature of the parent's conduct or condition, and whether any change has occurred in the course of the dependency and neglect proceeding. K.D., 139 P.3d at 700; D.L.C., 70 P.3d at 588-89. A reasonable time is relative, not indefinite, and must be determined by considering the physical, mental, and emotional conditions and needs of the child. K.D., 139 P.3d at 700; D.L.C., 70 P.3d at 589; see § 19-3-604(3), C.R.S.2009.
Here, the trial court found with record support that the same safety concerns regarding mother's ability to care for N.D.V. persisted after seventeen months. Contrary to mother's representation, her experts did not testify or opine that it would be safe to return the child to her care. Because this proceeding concerned a child under the age of six, N.D.V. was required to be placed in a permanent home no later than twelve months after the original out-of-home placement unless the trial court found that a permanent home was not in his best interests at that time. See § 19-3-703, C.R.S.2009.
Accordingly, we conclude that the trial court did not err, when it found that mother's conduct or condition was unlikely to change within a reasonable time to meet the child's needs.

VI. Less Drastic Alternatives
Finally, we reject mother's assertion that placement with her relatives, approved by a home study in September 2008, was a less drastic alternative to termination.
The trial court must consider and eliminate less drastic alternatives before entering an order terminating the parent-child legal relationship under section 19-3-604(1)(c). See People in Interest of M.M., 726 P.2d 1108, 1123 (Colo.1986) (noting that this requirement is implicit in the statutory scheme); People in Interest of D.B-J., 89 P.3d 530, 531 (Colo.App.2004). It must give primary consideration to the physical, mental, and emotional conditions and needs of the child. § 19-3-604(3); D.B-J., 89 P.3d at *421 531; People in Interest of J.M.B., 60 P.3d 790, 793 (Colo.App.2002).
Placement with a family member as an alternative to termination is dependent on the child's best interests and may not be appropriate if it does not provide adequate permanence or otherwise meet the child's needs. People in Interest of T.E.M., 124 P.3d 905, 910 (Colo.App.2005).
Here, the record shows that the maternal uncle's family was approved by an interstate home study completed in September 2008, shortly after the first termination hearing was conducted. However, a decision not to move N.D.V. was made at that time because the child had been in six different placements in one year, had no relationship with mother's relatives, and was bonded to and flourishing with the foster family with which he had been placed for more than a year.
The record shows that these relatives had been contacted when the child was first placed in foster care, but declined to pursue a home study at that time because it was "not the right time" and they believed the child would be returned to mother. The caseworker testified that these relatives were not aware of the nature and extent of the physical injuries the child had suffered, the police investigation into the injuries, or the safety concerns that remained. The evidence also established that an allocation of parental responsibilities was not an alternative to termination, regardless of who would ultimately adopt him, because the child demonstrated vacillating affect and only a minimal attachment to mother, and needed the security and permanency that only termination and adoption would provide.
Accordingly, because it is supported by the record, the trial court's determination that there were no less drastic alternatives to termination is binding on appeal. See K.D., 139 P.3d at 702.
The judgment is affirmed.
Judge WEBB concurs.
Judge LICHTENSTEIN dissents.
Judge LICHTENSTEIN dissenting.
I respectfully disagree with the majority's conclusion that the court acquired jurisdiction to terminate the parent-child relationship.
Since 1982, the supreme court has recognized that, because termination of parental rights is a decision of paramount gravity affecting a parent's fundamental interests, the "[t]he primary purpose of a dependency adjudication" is to "furnish the jurisdictional bases for State intervention." People in Interest of O.E.P., 654 P.2d 312, 317 (Colo. 1982) (emphasis added) (quoting People in Interest of A.M.D., 648 P.2d 625, 638-40 (Colo.1982)).
Juvenile courts are creatures of statute, and their jurisdiction does not extend beyond that established by the General Assembly. City & County of Denver v. District Court, 675 P.2d 312, 314 (Colo.1984); Johnson v. Black, 137 Colo. 119, 322 P.2d 99 (1958).
I conclude that under the statutes addressing a court's subject matter jurisdiction in dependency and neglect proceedings, a court acquires subject matter jurisdiction to terminate a parent-child relationship by adjudicating the child dependent and neglected. I reach this conclusion based on the General Assembly's statutory grant of subject matter jurisdiction in dependency and neglect proceedings, which (1) initially confers limited jurisdiction on a court to intervene in the parent-child relationship once a petition has been filed, but prior to adjudication of the child as dependent and neglected, and (2) then confers continuing jurisdiction over such proceedings once a child has been adjudicated as dependent or neglected.
In this case, the court never sustained the petition in dependency and neglect and never adjudicated the child dependent and neglected. Consequently, the court lacked subject matter jurisdiction to terminate the parent-child relationship.

I. Background
In February 2007, the Adams County Department of Social Services (department) filed a petition in dependency and neglect alleging that mother, upset with father, stated *422 that he "would be responsible if she and the children were not alive in the morning." Mother was placed on a mental health hold.
A magistrate initially placed the child in the custody of the department, and then ordered placement with the child's father. Meanwhile, the department informed the court that mother was successfully working with the department, complying with recommended therapy, attending domestic violence classes, and doing well with supervised visits with the child. The department acknowledged the validity of mother's explanation that her comments provoking the petition were an attempt to manipulate a response from the child's father, and she was not actually planning on carrying out her threat.
On June 14, 2007, the court accepted the parties' stipulation to a deferred adjudication, and as part of this stipulation, mother entered a no-fault admission to the petition's allegation that her children "are homeless without proper care or not domiciled with their parent ... through no fault of such parent."
The court conducted periodic review hearings until August 2008, when the court conducted a termination hearing but declined to terminate the parent-child legal relationship. The court subsequently conducted two more review hearings and then a held second termination hearing in February 2009, at which it terminated mother's parental rights.[1] At no time did the court enter an adjudication sustaining the petition, and at no time did the court enter an adjudication determining the child was dependent or neglected.

II. Subject Matter Jurisdiction: Adjudication Required for Continuing Jurisdiction
Subject matter jurisdiction "concerns the court's authority to deal with the class of cases in which it renders judgment." In re Marriage of Stroud, 631 P.2d 168, 170 (Colo. 1981). Also, "[i]t is not sufficient that the court has, in the abstract, the authority to decide the particular class of case which is before it. The court's authority must be invoked before it can act." Id. at 171.
The juvenile court's subject matter jurisdiction over a dependency and neglect proceeding does not extend beyond that established by the General Assembly. See City & County of Denver, 675 P.2d at 314. The basis for the exercise of judicial authority is found in jurisdictional statutes. People in Interest of Clinton, 762 P.2d 1381, 1388 (Colo.1988).
Section 19-1-104, C.R.S.2009, of the Children's Code is captioned "Jurisdiction" and sets forth the juvenile court's subject matter jurisdiction. Subsection (1)(b) of this statute provides that "the juvenile court shall have exclusive original jurisdiction in proceedings... [c]oncerning any child who is neglected or dependent." § 19-1-104(1)(b), C.R.S.2009. The court's jurisdiction is invoked by the filing of a petition in dependency and neglect. § 19-1-104(3)(a), C.R.S.2009 (court may enter temporary orders when a petition concerning a child has been filed); see also City & County of Denver, 675 P.2d at 315 (recognizing that the department's filing of a petition for determination of dependency or neglect confers jurisdiction upon the juvenile court to determine the status of the child).
This jurisdiction, however, is limited and temporary. Section 19-1-104(3)(a) provides that during the period in which a petition has been filed, but prior to adjudication, the court's jurisdiction extends only to the issuance of temporary orders. People in Interest of A.H., 216 P.3d 581, 586 (Colo.2009) (Martinez, J., dissenting) ("prior to adjudication, the juvenile court has jurisdiction to enter temporary orders"); see A.M.D., 648 P.2d at 639 (the filing of a petition alleging that a child is dependent or neglected provides a jurisdictional foundation for a court to issue temporary orders as it deems in the best interests of the child).
The juvenile court's limited jurisdiction continues until the court "determine[s] the *423 status of the child." City & County of Denver, 675 P.2d at 315.
An order adjudicating a child dependent or neglected, however, is required to invoke the court's continuing jurisdiction. See Stroud, 631 P.2d at 171 (a court's subject matter jurisdiction "must be invoked before it can act"). Section 19-3-205, C.R.S.2009, is captioned "Continuing Jurisdiction" and states, "Except as otherwise provided in this article, the jurisdiction of the court over any child adjudicated as neglected or dependent shall continue until he becomes twenty-one years of age unless earlier terminated by court order" (emphasis added). See A.M.D., 648 P.2d at 640 (acknowledging that a dependency or neglect proceeding "and the resulting adjudication" provide the jurisdictional bases for state intervention); A.H., 216 P.3d at 587 (Martinez, J., dissenting) (without a finding that the child is dependent or neglected, the juvenile court has no continuing jurisdiction over the subject matter); see also § 19-1-104(4)(a), C.R.S.2009 (statutory recognition of distinction between initial and "acquired" "continuing jurisdiction" of the juvenile court).
Thus, the General Assembly's statutory grant of subject matter jurisdiction in dependency and neglect proceedings initially confers limited jurisdiction on a court to intervene in the parent-child relationship once a petition has been filed, but prior to adjudication of the child as dependent and neglected; and confers continuing jurisdiction once a child has been adjudicated as dependent or neglected. A.M.D., 648 P.2d at 639-40; O.E.P., 654 P.2d at 317.
To be sure, with regard to dependency and neglect proceedings, the General Assembly has provided that a juvenile court has jurisdiction "[t]o terminate the legal parent-child relationship," § 19-1-104(1)(d), C.R.S.2009; however, in the context of the jurisdictional statutory scheme, I believe this statutory provision presupposes an adjudication of the child as dependent or neglected. See A.M.D., 648 P.2d at 639-40; O.E.P., 654 P.2d at 317; see also § 19-3-604(1)(c), C.R.S.2009.
The majority treats mother's admission as sufficient to invoke the court's continuing jurisdiction to terminate parental rights. My concern with this position is that jurisdiction does not extend beyond that established by the General Assembly. Clinton, 762 P.2d at 1387; City & County of Denver, 675 P.2d at 314. As the supreme court noted in Clinton, where the statutory scheme does not suggest that a particular act invokes the court's subject matter jurisdiction, such act will not serve as the requisite act granting such jurisdiction to the court. Clinton, 762 P.2d at 1387. Here, the "Continuing Jurisdiction" statute suggests only that an adjudication would invoke the ongoing jurisdiction of the court. See § 19-3-205. The jurisdiction statutes as a whole never suggest that the entry of an admission to a deferred adjudication invokes a court's continuing jurisdiction.
The majority also relies on Clinton for the proposition that a later failure to follow statutory requirements does not divest the court of subject matter jurisdiction. See 762 P.2d at 1386. But because jurisdiction does not extend beyond that established by the General Assembly, and because the General Assembly here created a distinction between original and continuing jurisdiction, this statement in Clinton is inapposite. In Clinton, the supreme court determined, in the context of mental health certifications, that once the certification petition has been properly filed, the court in which the petition is filed is the court of original and continuing jurisdiction. Under the statutory scheme at issue there, the General Assembly specifically provided that "[t]he court in which the [certification] petition is filed ... shall be the court of original jurisdiction and of continuing jurisdiction for any further proceedings under this article." § 27-10-111(4), C.R.S. 2009 (emphasis added). Thus, Clinton is distinguishable on this point.

III. Impact of Mother's Admission in the Context of a Deferred Adjudication
Based on the statutes governing a juvenile court's subject matter jurisdiction and the nature of an admission in the deferred adjudication context, I disagree that mother's admission to the petition determined the status of the child as dependent or neglected and thereby conferred jurisdiction on the *424 court to proceed further, despite the lack of an adjudicatory order.
To initiate a deferred adjudication, a parent enters an admission to a dependency and neglect petition, which authorizes the state's limited intervention in the case. This procedure provides a parent who has cooperated with the department of social services an opportunity to complete his or her rehabilitation without a dependency and neglect adjudication. Upon receiving the parent's admission, a court will make a finding that the allegation of the petition has been proven by a preponderance of the evidence. See § 19-3-505(5), (7)(a), C.R.S.2009.
Because a deferred adjudication is a unique creation of statute, a parent's admission must be put in the context of the adjudicatory hearing statute, section 19-3-505, which states in pertinent part:
(1) At the adjudicatory hearing, the court shall consider whether the allegations of the petition are supported by a preponderance of the evidence....
....
(5) After making this finding as provided by paragraph (a) of subsection (7) of this section but before making an adjudication, the court may continue the [adjudicatory] hearing from time to time, allowing the child to remain in his own home or in the temporary custody of another person or agency subject to such conditions of conduct and of visitation or supervision by a juvenile probation officer as the court may prescribe if:
(a) Consent is given by the parties, including the child and his parent, guardian, or other legal custodian after being fully informed by the court of their rights in the proceedings, including their right to have an adjudication made either dismissing or sustaining the petition;
(b) Such continuation shall extend no longer than six months without review by the court. Upon review, the court may continue the case for an additional period not to exceed six months, after which the petition shall either be dismissed or sustained.

....
(7) (a) When the court finds that the allegations of the petition are supported by a preponderance of the evidence, except when the case is continued as provided in the introductory portion of subsection (5) of this section, the court shall sustain the petition and shall make an order of adjudication setting forth whether the child is neglected or dependent....
(b) The court shall then hold the dispositional hearing ....
§ 19-3-505(1), (5)(a)-(b), (7)(a)-(b), C.R.S. 2009 (emphasis added).
Accordingly, under subsection (5), the parent's admission is conditional, as it is based on the court's not continuing "the case" beyond one year unless the court enters an adjudication sustaining the petition. Once the legislatively defined deferral period expires, the court "can take no other action than either to dismiss or sustain the petition." People in Interest of K.M.J., 698 P.2d 1380, 1382 (Colo.App.1984); see, e.g., § 19-1-102(1)(c), C.R.S.2009 (it is the intent of the General Assembly for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child). Only when a court sustains a petition, it "shall make an order of adjudication setting forth whether the child is neglected or dependent." § 19-3-505(7)(a).
Here, mother's admission to the dependency and neglect petition was entered as part of a stipulation to a deferred adjudication. Thus, her admission only authorized the court's temporary intervention in the case without a dependency and neglect adjudication. See § 19-3-505(7)(a) (a court shall sustain a petition when it finds that the allegations are supported by a preponderance of the evidence, "except when the case is continued as provided in the introductory portion to subsection (5) of this section [deferred adjudication]" (emphasis added)).
Accordingly, subsection (5)(a) of this statute acknowledges that the parent, even after entering an admission to the petition, still possesses the right to have an adjudication made either dismissing or sustaining the petition. See § 19-3-505(5)(b). The deferred *425 adjudication statute grants the court authority to dismiss the petition, even where the parent enters an admission to the petition. Thus, a parent's admission in the deferred adjudication setting does not confer continuing jurisdiction, because the petition has never been sustained and the child has never been adjudicated dependent or neglected.
A child's status as dependent or neglected is determined only by the entry of an order of adjudication. See People in Interest of U.S., 121 P.3d 326, 328 (Colo.App.2005) (for the purpose of a court's continued authority to enter orders, the dispositive factor in determining the status of the child is an actual adjudication, not the existence of "fault" or "no fault" admissions); People in Interest of P.D.S., 669 P.2d 627, 628 (Colo.App.1983) (adjudications determine whether the child is dependent and neglected); see also People in Interest of C.M., 116 P.3d 1278, 1283 (Colo. App.2005) (court must determine whether the factual allegations of the petition are supported and then must determine whether "the status of the child warrants protective or corrective state intervention into the family").
I therefore disagree with the majority's conclusion that because the court accepted mother's admission to an allegation in the petition in dependency and neglect, the court had jurisdiction to proceed to termination without an adjudicatory order.
For the foregoing reasons, I am persuaded that the lack of an adjudicatory order divested the court of jurisdiction to terminate the mother-child relationship. I would therefore vacate the order of termination.
NOTES
[1] Mother does not assert insufficiency of the evidence supporting termination.
[2] However, we need not and do not determine what actions would be required if a parent, after admitting the petition, later sought to withdraw it before entry of an adjudicatory order or contested termination based on the lack of an adjudicatory order.
[3] We again note that we do not determine what actions would be required if a parent, after admitting the petition, later sought to withdraw the admission before entry of an adjudicatory order or contested termination based on the lack of an adjudicatory order.
[1] As the majority acknowledges, the court relied on evidence that mother was not able to protect the child from father, who was primarily suspected of being responsible for the child's two unexplained injuries in August 2007, because she did not seek medical attention for the child and changed her explanation as to the possible cause of the injuries.