24CA0726 Peo in Interest of TN 11-14-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0726
Adams County District Court No. 22JV30087
Honorable Caryn A. Datz, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Tyl.N. and Tyr.N., Children,

and Concerning G.T.N. and S.J.P.,

Appellants.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

---

Heidi Miller, County Attorney, Lisa Vigil, Assistant County Attorney, Westminster, Colorado, for Appellee

Alison Bettenberg, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant G.T.N.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant S.J.P.

¶ 1     S.J.P. (mother) and G.T.N. (father) appeal the judgment terminating their parent-child legal relationships with their children, Tyl.N. and Tyr.N.  We affirm.

## I.    Background

¶ 2     In November 2022, the Adams County Human Services Department (Department) received a report that mother had given birth to the children and admitted to using controlled substances during her pregnancy.  Mother had an open dependency and neglect case at the time with an older child who had also tested positive for methamphetamine at birth.  The Department removed the children and placed them in foster care.

¶ 3     Based on this information, the Department filed a petition in dependency and neglect.  After each parent entered a no-fault admission, the juvenile court adjudicated the children dependent and neglected.  The court then adopted treatment plans for the parents that required them to (1) address their substance dependence and mental health concerns; (2) attend family time; (3) provide a safe and stable home and meet the children's needs; and (4) cooperate with the Department and professionals.

¶ 4    In August 2024, the Department moved to terminate the parents' parental rights. The juvenile court held an evidentiary hearing over three days in March 2024. In a comprehensive written order, the court granted the Department's motion and terminated the parents' parental rights.

## II.    Reasonable Efforts

¶ 5    Mother asserts that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her and reunify her with the children. We disagree.

### A.    Applicable Law and Standard of Review

¶ 6    In deciding whether to terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, the juvenile court must consider whether the county department of human services made reasonable efforts to rehabilitate the parent and reunite the parent with the child. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. The Colorado Children's Code defines "reasonable efforts" as the "exercise of diligence and care" to reunify parents with their children. § 19-1-103(114).

¶ 7    The reasonable efforts standard is satisfied if the department provides appropriate services in accordance with section 19-3-208.

2

§ 19-1-103(114). Section 19-3-208 requires departments to provide, when appropriate, screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services. § 19-3-208(2)(b). If additional funds are available, the department must also provide "[d]rug and alcohol treatment services." § 19-3-208(2)(d)(V).

¶ 8    In assessing the department's reasonable efforts, the juvenile court should evaluate whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. But the parent is ultimately responsible for using the services to comply with the plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011). The court may consider a parent's unwillingness to participate in treatment in

determining whether the department made reasonable efforts.  *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 9     Whether a department of human services satisfied its obligation to make reasonable efforts is a mixed question of fact and law.  *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.  We review the juvenile court's factual findings for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation.  *Id.*

### B.    Analysis

¶ 10     The juvenile court found that the Department made reasonable efforts to rehabilitate mother and reunify her with the children.  The court found, among other things, that the Department provided mother active case management, life skills training, a dual diagnosis evaluation and treatment services, monitored sobriety, housing assistance, and bus passes.  The court determined, however, that, despite these efforts, mother had not utilized these services to successfully comply with her treatment plan and become a fit parent.

¶ 11     The record supports the juvenile court's findings.  The caseworker testified that the Department first referred mother to a

dual diagnosis evaluation in April 2023, but she did not complete it until December 2023. The evaluator recommended the "highest level of treatment," which required mother to attend group therapy three times a week. The caseworker reported that mother only attended seventeen of twenty-seven scheduled sessions, and of those seventeen, she appeared more than fifteen minutes late on twelve occasions. The Department also provided mother with a list of providers to accommodate her drug screens and later switched from urinalysis testing to mouth swabs at mother's request. The caseworker said that mother completed just two screens during the case (one of which was positive for methamphetamine) and missed 197 screens. The Department provided mother with local and regional bus passes to allow her to travel to treatment and screens.

¶ 12     The record also shows that the Department provided mother with housing resources, a life skills worker, and family time services. For example, the caseworker said that the Department provided mother with a list of housing resources and utilized a life skills worker to help her access those resources. The life skills worker aided mother in getting an apartment, and the Department provided funding for rent. The caseworker even spoke with the

5

apartment manager and convinced him to reverse course on the initial denial of mother's application. Once mother had an apartment, the Department arranged for mother to have supervised visits in her home.

¶ 13    The record supports the juvenile court's findings that (1) the Department provided mother with appropriate resources to engage with her treatment plan and (2) she did not take advantage of those resources and was unsuccessful in becoming fit. *See A.V.*, ¶ 12; *J.C.R.*, 259 P.3d at 1285. Nevertheless, mother asserts, for the following three reasons, that the court erred. We disagree with all three contentions.

¶ 14    First, mother argues that the caseworker should have met with her during family time. But the caseworker explained that she declined to meet with mother during her family time because it would impede the visits. In fact, mother agreed with this sentiment, testifying that she was "offended" that the caseworker wanted to talk with her about the treatment plan during one particular visit because "[t]hat's the only time [she] get[s] with" her children. The juvenile court also found, with record support, that "the caseworker made significant efforts to contact and engage [mother]," but

mother "did not reciprocate these efforts." For example, the record shows that the caseworker attempted to contact mother monthly, but mother was often unresponsive or would cancel appointments. We therefore discern no error.

¶ 15 Second, we are not persuaded by mother's assertion that the Department should have provided her with drug screens at the same location where she was attending therapy. The caseworker said that the Department declined to do so because they had a contract with another provider. Still, the caseworker said that mother could submit drugs screens with her treatment provider if she paid for them herself. And mother testified that she did set up those drug screens but nevertheless failed to provide evidence of any such screens. Noting that section 19-3-208 does not require the Department to provide a parent with the provider of her choice, we discern no error. *See* § 19-3-208(2)(b)(III), (d)(V).

¶ 16 Finally, mother argues that the Department did not make reasonable efforts because it did not allow her to attend the children's medical appointments. To start, we note that mother's treatment plan did not require her to attend the children's medical appointments. And the record is unclear as to whether the

7

Department prohibited mother from attending these appointments, as she suggests on appeal. At any rate, the caseworker testified that mother had the providers' contact information and was "encouraged" to contact those providers to get updates, but mother never did so. Given all this, we cannot say that the Department failed to make reasonable efforts in this area.

### III. Fit Within a Reasonable Time

¶ 17 Both parents contend that the juvenile court erred by terminating their parental rights because the record showed that they could become fit within a reasonable time. Again, we disagree.

### A. Applicable Law and Standard of Review

¶ 18 Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), it must find, by clear and convincing evidence, that (1) the parent did not comply with an appropriate, court-approved treatment plan or the plan was not successful in rendering the parent fit; (2) the parent is unfit; and (3) the parent's conduct or condition is unlikely to change in a reasonable time.

¶ 19 An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *People in Interest of D.P.,* 160 P.3d 351, 353 (Colo. App. 2007).

Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficient to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs and, therefore, may also be considered in determining unfitness." *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 20 A parent must have a reasonable amount of time to work on a treatment plan before the juvenile court terminates parental rights. *People in Interest of D.Y.*, 176 P.3d 874, 876-77 (Colo. App. 2007).

¶ 21 When determining whether a parent's conduct or condition is likely to change in a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). Where a parent has made little to no progress on a treatment plan, the court need not give the parent additional time to comply. *See People in Interest of R.B.S.*, 717 P.2d 1004, 1006 (Colo. App. 1986).

¶ 22    The determination of a reasonable period is fact-specific and varies from case to case. *D.Y.*, 176 P.3d at 876; *see also People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. A reasonable time is not an indefinite time, and it must be determined by considering the child's physical, mental, and emotional conditions and needs. *S.Z.S.*, ¶ 24. When a child is under six years old, as in this case, the juvenile court must also consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024.

¶ 23    Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, and we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

### B.    Analysis

¶ 24    The juvenile court found that the parents had not complied with their treatment plans, remained unfit, and were unlikely to become fit within a reasonable time. Specifically, the court found that the parents were unlikely to become fit within a reasonable

10

time because (1) they had "treatment plans in place for a full year, with minimal progress"; (2) there was a lengthy history of substance dependence and involvement in previous dependency and neglect proceedings; and (3) the children needed permanency as "soon as practicable."

¶ 25     The record supports the juvenile court's findings. The court took judicial notice of mother's six previous dependency and neglect cases. The caseworker from the case immediately preceding the current case testified that mother did not comply with treatment or participate in monitored sobriety. In the present case, mother did not complete a dual diagnosis evaluation until more than a year after the case opened, minimally participated in treatment thereafter, and missed nearly 200 drug screens. Mother testified that she began using drugs over twenty years ago and had spent time in prison for drug charges. The caseworker opined that mother could not become fit within a reasonable time, noting that she had already had enough time to comply but did not do so.

¶ 26     As for father, the record shows that, although he began treatment somewhat earlier than mother, he did not fully engage. For example, the caseworker said that father started treatment in

June 2023 before being discharged for noncompliance in October 2023. Then, he did another intake with a new provider in November 2023, but never engaged. And in January 2024, he entered detox and inpatient treatment but left after a few days. The record also shows that father completed more drugs screens than mother, but all his screens were positive for substances, and he had not provided any screens since November 2023. Like mother, father admitted to a long history of substance dependence going back over twenty years. The caseworker opined that father could not become fit within a reasonable time based on his lack of participation and the children's needs.

¶ 27 Nevertheless, both parents assert that the juvenile court erred because they made sufficient progress during the case to warrant additional time. For example, mother notes that she had housing, completed the dual diagnosis evaluation, attended some therapy sessions, cooperated with the life skills coach, and attended feeding therapy, while father points to evidence that he consistently attended family time and participated in services to address his substance dependence issues. But the court considered this evidence and still concluded that the parents were unlikely to

become fit in a reasonable time. Because the record supports the court's findings, as described above, we cannot reweigh the evidence or substitute our judgment for that of the juvenile court. *See S.Z.S.*, ¶ 29. We therefore reject the parents' assertions.

¶ 28 Mother also contends that, if the Department had made reasonable efforts, then she could have become fit within a reasonable time. We reject this argument for the same reasons described in Part II.B. above.

¶ 29 Last, father maintains that the juvenile court erred because he had only five months to comply with his treatment plan between adoption of the treatment plan and filing of the termination motion. But the most relevant timeframe is not how long the parent had between adoption of the treatment plan and the filing of the termination motion. Rather, it is the period that father had from the treatment plan's adoption to the termination hearing. *See D.Y.*, 176 P.3d at 876-77 (noting that the court erred when it gave father only three months between adoption of the treatment plan and termination of parental rights). And father had over a year to work on his treatment plan. *See A.J.*, 143 P.3d at 1152. Considering that this was an EPP case, we cannot say that the court erred by

terminating father's parental rights after giving him over a year to work on his treatment plan.

## IV. Less Drastic Alternative

¶ 30　Father argues that the juvenile court erred by finding that there was no less drastic alternative to termination. We disagree.

### A. Applicable Law and Standard of Review

¶ 31　In addition to the termination criteria in section 19-3-604(1)(c), the juvenile court must also consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122-23 (Colo. 1986). When considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3); *People in Interest of Z.P.*, 167 P.3d 211, 214 (Colo. App. 2007). In assessing less drastic alternatives to termination, the court may consider, among other things, whether (1) an ongoing relationship between the parent and child would be beneficial, *People in Interest of A.R.*, 2012 COA 195M, ¶ 38; (2) the child is bonded with the parent, *People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo. App. 2009); (3) the placement option prefers adoption over an allocation of parental responsibilities (APR), *S.N-V.*, 300 P.3d at 920; and

(4) an APR provides adequate permanence and stability for the child, *People in Interest of T.E.M.*, 124 P.3d 905, 910-11 (Colo. App. 2005).

¶ 32    To aid the juvenile court in determining whether there is a less drastic alternative to termination, the department must evaluate a reasonable number of people the parent identifies as placement options. *People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2004). But the department is not obligated to "independently identify and evaluate other possible placement alternatives." *Z.P.*, 167 P.3d at 215.

¶ 33    For a less drastic alternative to be viable, it must do more than "adequate[ly]" meet a child's needs. *A.M.*, ¶ 27. If the juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. And under those circumstances, we must affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B.    Analysis

¶ 34    The juvenile court found that there was no less drastic alternative to termination and that termination and adoption were in the children's best interests.  In doing so, the court found that the Department had adequately investigated family members for placement, but the court concluded that there was either no available family to serve as a placement or they would not accept an alternative to adoption.  In any event, the court recognized that "the mere existence of a relative placement willing to accept an alternative to adoption" was not determinative of whether a less drastic alternative existed because the alternative must also be in the children's best interests.  And after considering the parent's unfitness and the children's need for permanency, the court ultimately rejected less drastic alternatives and ordered termination.

¶ 35    The record supports the juvenile court's findings.  The caseworker testified that the Department initiated two family searches during the case.  The caseworker spoke with family members after the first search, but they declined placement because they were unable to meet the children's medical needs.

After the second search, the caseworker invited some family members to a team meeting, at which the family members agreed that the children should stay with the foster parents. However, the caseworker said that she still initiated a home study for a relative who said she could be a placement if the court "wanted to have the babies go back to family."

¶ 36 The caseworker opined that it was in the children's best interests to remain with their current placement because transitioning to a new placement would be difficult for them. The caseworker said that the foster parents could meet all the children's special needs and were interested in adopting them. She also opined that an APR was not appropriate in this case because it could not meet the children's needs for permanency, the parents had not made any progress, and there were ongoing child protection concerns.

¶ 37 The record therefore shows that the juvenile court considered less drastic alternatives but rejected them because they were not in the children's best interests. *See A.M.*, ¶ 32. And because the record supports the court's finding, we cannot disturb it. *See B.H.*, ¶ 80.

¶ 38　　We are not persuaded to reach a different conclusion based on father's assertion that the Department failed to adequately investigate relatives. As described above, the record shows that the Department investigated relatives, but they were only interested in being a placement option if the current placement did not work out. The parents never asked the Department to investigate any specific person for placement nor did they ask the juvenile court to place the children with someone else. In any event, even if there was a relative who was an appropriate placement option, the court found, with record support, that an APR would not be in the children's best interests based on the factors previously discussed.

¶ 39　　Nor are we convinced by father's contention that a less drastic alternative existed because he had a bond with the child. To be sure, a juvenile court should consider whether a child has a bond with a parent when deciding if there is a viable less drastic alternative to termination. *See N.D.V.*, 224 P.3d at 421. But this is just one of the factors that is relevant in deciding whether a less drastic alternative is in the children's best interests. *See A.R.*, ¶ 38 (noting that the court "may consider various factors" in its analysis of less drastic alternatives). And the court determined that there

18

was no viable less drastic alternative to termination based on the parent's unfitness and the children's need for permanency. The record supports the court's findings, and we cannot reweigh the evidence or substitute our judgment to reach a different conclusion. *See B.H.*, ¶ 80; *A.M.*, ¶ 32; *see also S.Z.S.*, ¶ 29.

## V.    Disposition

¶ 40    The judgment is affirmed.

JUDGE PAWAR and JUDGE SCHUTZ concur.