24CA1270 Peo in Interest of FS 03-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1270
Jefferson County District Court No. 22JV30220
Honorable Lindsay L. VanGilder, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of F.S., a Child,

and Concerning A.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by JUSTICE MARTINEZ*
Román, C.J., and Graham*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

---

Kimberly Sorrells, County Attorney, Sarah Oviatt, Assistant County Attorney, Golden, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In this dependency and neglect proceeding, A.S. (mother) appeals the judgment terminating her parent-child legal relationship with F.S. (the child).  We affirm.

## I.     Background

¶ 2     In November 2022, the Jefferson County Division of Children, Youth, and Families filed a petition in dependency and neglect concerning the then-two-month-old child.  The Division alleged concerns about mother's mental health because she had recently been transported from an Intervention Community Corrections Services (ICCS) facility to a mental health facility after showing symptoms of psychosis.  The child had been living with mother at the ICCS facility, and the staff members were concerned that mother might harm her.

¶ 3     When the case opened, the Division named R.S. and John Doe as potential fathers of the child.  Mother had stated that she believed the father was deceased and refused to provide his name.  The Division had located a potential father named R.S., who had no contact with the children and no involvement in the caring or providing for the child.  At the time the Verified Petition for

1

Dependency and Neglect was filed, the Department had no knowledge whether R.S. was alive.

¶ 4     The juvenile court granted temporary legal custody to the Division.  Approximately one month into the proceeding, the Division placed the child with mother's cousin, where she remained for the rest of the case.

¶ 5     The juvenile court adjudicated the child dependent or neglected and adopted a treatment plan that required mother to address her substance use and mental health issues; create a safe and stable environment for the child; and attend supervised family time.  Shortly after mother was released from ICCS, the Division became concerned that her new boyfriend was physically abusing her.  Based on those concerns, the court amended mother's treatment plan to require that she engage in domestic violence victim services.

¶ 6     The Division later moved to terminate mother's parental rights.  About two weeks before the termination hearing, mother filed a forthwith motion to establish parentage, claiming that her boyfriend was the child's presumed father because he had voluntarily added his name to the child's birth certificate.  At the termination hearing,

mother argued that the court was required to hold a parentage hearing and determine if mother's boyfriend was the child's legal father before it could proceed. The juvenile court disagreed, finding that it could proceed with the termination hearing as to mother. After considering the evidence, the court granted the termination motion but held its order in abeyance pending a parentage hearing.

¶ 7 Approximately one month later, the juvenile court held a parentage hearing, but mother and her boyfriend did not appear. Based on offers of proof, the court found that mother's boyfriend was not a presumed parent under section 19-4-105(2), C.R.S. 2024. The court then lifted the abeyance and entered the final judgment terminating mother's parental rights.

## II. Statutory Criteria and Standard of Review

¶ 8 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 9	The question of whether a juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10; *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. Thus, we review the court's factual findings for clear error but review de novo its legal conclusions based on those facts. *S.R.N.J-S.*, ¶ 10; *A.S.L.*, ¶8.

### III.	Timing of the Parentage Determination

¶ 10	Mother first contends that the juvenile court erred by holding the termination hearing before it determined whether mother's boyfriend was the child's legal father. She argues that by proceeding to termination before determining parentage, the court "eliminat[ed] a possible less drastic alternative to termination." We disagree.

¶ 11	First, to the extent mother argues that the juvenile court was prohibited from terminating her parental rights before it determined whether her boyfriend was the child's legal parent, she is incorrect. She contends that a juvenile court cannot terminate one parent's rights unless the other parent has been given the opportunity to complete a treatment plan and work toward reunification. But parental rights are personal between each parent and each child

4

and not contingent upon another parent's rights. *People in Interest of J.L.M.*, 143 P.3d 1125, 1127 (Colo. App. 2006). And the statutes governing termination of the parent-child legal relationship do not proscribe termination of one parent's rights to the exclusion of the other. *Id.*; *see also* §§ 19-3-601 to -612, C.R.S. 2024.

¶ 12    Second, part of mother's argument is based on a misunderstanding of the proceedings and is moot. Specifically, she contends that if the juvenile court had held a parentage hearing before the termination hearing, it may have determined that mother's boyfriend was the child's legal father. She further contends that if, after being determined to be the child's legal father, mother's boyfriend had been given a treatment plan, he may have successfully completed it. She then asserts that after successful completion of a treatment plan, mother's boyfriend could have been considered as a placement option and less drastic alternative to termination of mother's parental rights.

¶ 13    However, before the juvenile court entered the final judgment terminating mother's rights, it held a parentage hearing and determined that her boyfriend did not meet any of the presumptions for parentage under section 19-4-105(2). Thus, contrary to

mother's assertions, the court had determined that her boyfriend was not the child's legal father prior to terminating her rights.

¶ 14 Mother does not challenge the court's parentage determination. Nor does she explain how the outcome of the parentage hearing would have been different if the court had held it before the termination hearing. Accordingly, her argument based on the possibility of mother's boyfriend being the child's legal father is moot because the court determined that he is not the legal father. *See In re Marriage of Tibbetts*, 2018 COA 117, ¶ 8 (an issue is moot when a judgment, if rendered, would have no practical legal effect on the existing controversy).

¶ 15 Next, mother's argument that the juvenile court's decision to proceed with the termination hearing prevented it from considering her boyfriend as a less drastic alternative is predicated on a misinterpretation of the law — that a person must be a child's legal parent to be considered as a placement option or less drastic alternative. To the contrary, it is well-established that a department may place a child with non-parents. For example, departments are encouraged to place children with kin, which includes both relatives and non-relatives. *See* § 19-3-403(3.6)(a)(V),

C.R.S. 2024 (noting that the juvenile court shall give preference to placement with kin); § 19-1-103(91), C.R.S. 2024 (defining "kin" as "a relative of the child, a person ascribed by the family as having a family-like relationship with the child, or a person who has a prior significant relationship with the child"). Thus, regardless of whether mother's boyfriend was the child's legal father or not, the Division could have considered him as a placement option.

¶ 16     Nonetheless, nothing in the record indicates that either mother or her boyfriend asked the Division to evaluate him as a placement option. *See People in Interest of Z.P.*, 167 P.3d 211, 215 (Colo. App. 2007) (although the department must evaluate a reasonable number of persons identified by the parents as possible placement alternatives, it has no obligation to independently identify and evaluate other possible placement alternatives). The most mother requested was that her boyfriend attend family time with her. But mother's boyfriend never provided a release of information or consented to a background check so that he could participate in family time. Further, the record shows mother's boyfriend never responded to the caseworker's attempts to contact

him, nor did he ask to see the child, to be added to the case, or for a treatment plan.

¶ 17　Last, at the termination hearing, mother did not present any evidence indicating that her boyfriend wanted to be considered as a placement option or that allocating parental responsibilities to him would have been in child's best interests.  Even if she had, the juvenile court categorically rejected less drastic alternatives to termination because it found that there was "not enough of a relationship" between mother and the child to maintain the parent-child relationship and that termination was in the child's best interests.  *See People in Interest of A.R.*, 2012 COA 195M, ¶ 38 (when analyzing less drastic alternatives, a juvenile court may consider whether an ongoing relationship with a parent would be beneficial to the child); *People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo. App. 2009) (a juvenile court may consider whether the child is bonded with the parent in analyzing whether a less drastic alternative exists); *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27 (for a less drastic alternative to be viable, it must do more than "adequate[ly]" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child).  The court's

findings were supported by the caseworker's testimony that mother had not seen the child in four months and the caseworker's expert opinion that termination was in the child's best interests.

## IV. Reasonable Efforts

¶ 18    Mother also contends that the juvenile court erred by finding that the Division made reasonable efforts to rehabilitate her and reunify her with the child. We are not persuaded.

¶ 19    The Division argues that mother failed to preserve her reasonable efforts arguments because she did not raise them before the termination hearing. *See People in Interest of D.P.*, 160 P.3d 351, 355-56 (Colo. App. 2007) (declining to review a reasonable efforts finding because the parent failed to object to services provided before the termination hearing); *but see People in Interest of S.N-V.*, 300 P.3d 911, 916 (Colo. App. 2011) (holding that a parent's failure to object to services does not bar appellate review of a reasonable efforts finding). However, we need not determine whether she preserved her reasonable efforts arguments, or was required to, because even if we assume she did, we discern no basis for reversal.

¶ 20　To determine whether a parent is unfit, the juvenile court must consider whether the department of human services made reasonable efforts to rehabilitate the parent and reunite the family. *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024; *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114), C.R.S. 2024. Services provided in accordance with section 19-3-208, C.R.S. 2024, satisfy the reasonable efforts standard. § 19-1-103(114). However, services must be provided only if they are determined to be necessary and appropriate based on the individual case plan. § 19-3-208(2)(b), (d). Moreover, a parent is ultimately responsible for using the services to obtain the assistance needed to comply with their treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

¶ 21　Mother argues that "while the [Division] initially made efforts to ensure that [she] had access to basic services," it failed to continue to provide reasonable efforts or "ensure that she had the services and referrals she needed for the months prior to termination." Besides arguing that mother's family time was

10

inadequate and that the caseworker failed to regularly meet with her, mother does not identify any services or referrals she needed that the Division did not provide. Based on our review of the record, we are not persuaded that the Division failed to meet its reasonable efforts burden because it did not provide adequate family time or schedule regular meetings with her.

¶ 22 First, we disagree with mother's assertion that her family time was "illegally suspended" during the four months leading up to the termination hearing. Rather, the caseworker testified that the family time provider paused mother's referral after mother failed to "keep consistent contact" with the provider and missed several family time sessions. At that point, the family time provider required that mother attend a meeting to discuss barriers before family time sessions would resume. Despite the provider's attempts to contact mother to discuss a meeting, mother did not respond. Thus, the record indicates that the lack of family time during the four months leading up to termination was caused by mother's failure to contact the provider and set up a meeting, not by the Division's failure to arrange or provide family time services. *See id.*

at 1285 (a parent is ultimately responsible for using the services provided by a department).

¶ 23    Second, we disagree with mother's assertion that the Division failed to make reasonable efforts because the caseworker had not met with mother or scheduled a family engagement meeting since the fall of 2023.  The caseworker testified that around that time, she began having difficulties communicating with mother and that mother stopped engaging with the Division.  The caseworker also testified that on numerous occasions throughout the case, mother got new phone numbers and email addresses but did not tell the caseworker about them, so the caseworker had no way to contact her.  Also, the caseworker attempted to meet with mother before or after her family time sessions on several occasions, but she was unable to because mother did not attend.

¶ 24    Further, although we agree that it is generally helpful for a caseworker to have regular contact with a parent, nothing in section 19-3-208 requires that a caseworker meet with a parent a certain number of times throughout a case.  Mother does not explain how a meeting with the caseworker, on its own, would have helped to rehabilitate her or reunite the family.  *See* § 19-3-208(1) (services

are only required if they are determined to be necessary and appropriate based on the individual plan). Rather, she asserts the Division and the caseworker should have met with her to "ensure she had the services and referrals she needed." But, as noted above, mother does not identify what services or referrals she needed, nor does she explain what she would have asked for if the caseworker had met with her regularly.

¶ 25 Based on the foregoing, we discern no error in the juvenile court's determination that the Division made reasonable efforts to rehabilitate mother and reunite her with the child.

## V. Disposition

¶ 26 The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE GRAHAM concur.