24CA1508 Peo in Interest of KRP 05-01-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1508
Douglas County District Court No. 22JV49
Honorable H. Clay Hurst, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of K.R.P., a Child,

and Concerning L.B.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Lipinsky and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

---

Jeffrey A. Garcia, County Attorney, R. LeeAnn Reigrut, Supervising Senior Assistant County Attorney, Castle Rock, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     L.B. (mother) appeals the judgment terminating her parent-child legal relationship with K.R.P. (the child).  We affirm.

## I.     Background

¶ 2     In February 2022, the Douglas County Department of Human Services (Department) received a report that mother was using substances and that her probation sentence may be revoked as a result.  The Department enacted a safety plan, but mother did not comply with it.  As a result, the Department removed the child from mother's care and assumed temporary legal custody of the child.

¶ 3     Based on this information, the Department filed a petition in dependency or neglect.  Mother admitted to the allegations in the petition, and the juvenile court adjudicated the child dependent or neglected.  The court then adopted a treatment plan for mother that required her to (1) address her substance abuse issues; (2) attend family time; (3) comply with her probation sentence and refrain from further criminal activity; and (4) cooperate with the Department and the case professionals.

¶ 4     In October 2023, the Department moved to terminate mother's parental rights.  The juvenile court held a two-day hearing in March and May 2024.  After hearing the evidence, the court entered a

written ruling terminating the parent-child legal relationship between mother and the child under section 19-3-604(1)(c), C.R.S. 2024.

## II. Treatment Plan Compliance

¶ 5 Mother contends that the juvenile court erred by terminating her parental rights even though the issues that gave rise to the action had been resolved. We construe this argument to mean that the juvenile court erred by finding that mother did not successfully comply with her treatment plan. We disagree.

### A. Standard of Review and Applicable Law

¶ 6 Whether the juvenile court erred by terminating parental rights under section 19-3-604(1)(c) presents a mixed question of fact and law. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. We review the court's factual findings for clear error but review its legal conclusions de novo. *Id.*

¶ 7 Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must find, among other things, that the parent did not comply with an appropriate, court-approved treatment plan or the plan was unsuccessful. § 19-3-604(1)(c)(I). When a child is under six years old at the time a petition is filed,

such as in this case, the court cannot find that a parent reasonably complied with a treatment plan when the parent "exhibits the same problems addressed in the treatment plan without adequate improvement." § 19-3-604(1)(c)(I)(B). Although absolute compliance with a treatment plan is not required, even substantial compliance might not be sufficient to correct or improve the parent's conduct or condition, or to render the parent fit. *People in Interest of T.E.M.*, 124 P.3d 905, 909 (Colo. App. 2005).

## B. Analysis

¶ 8 The juvenile court found that mother did not reasonably comply with "significant aspects" of her treatment plan. Specifically, the court found that mother did not engage in treatment, demonstrate sobriety, or consistently attend family time. Consequently, it determined that mother exhibited the same problems addressed in the treatment plan without adequate improvement. *See* § 19-3-604(1)(c)(I)(B).

¶ 9 The record supports the juvenile court's findings. We acknowledge that mother initially addressed her substance abuse issues in the first year of the case by attending in-patient treatment. The caseworker testified, however, that mother relapsed

3

in January 2023 and did not participate in any treatment or provide any drug screens for well over a year afterwards. The record also shows that mother inconsistently participated in family time, which resulted in her being discharged from two different providers. The caseworker opined that mother's partial compliance with family time was insufficient to demonstrate that she could permanently care for the child and ensure the child's safety.

¶ 10 Mother submits that the juvenile court erred by terminating her parental rights because (1) the "Department's probation concern was corrected" and (2) her substance use "did not affect proper parenting." As to the former, although the record shows that mother successfully complied with the probation component of her treatment plan, it also establishes, as noted above, that mother did not successfully comply with the substance abuse or family time components. *See T.E.M.*, 124 P.3d at 909 (concluding that, even though the record showed that the parent "complied with some aspects of the treatment plan," the court did not err by terminating his parental rights). As to the latter, the evidence shows that mother did not complete any treatment after her relapse, nor did she provide any evidence of sobriety. In addition, the expert

4

witnesses testified that, while mother was under the influence of substances, she could not adequately parent the child.

¶ 11 In sum, the record supports the juvenile court's findings that mother did not reasonably comply with her treatment plan, the treatment plan was unsuccessful in rendering her a fit parent, and mother continued to exhibit the same problems addressed in her treatment plan without adequate improvement. *See* § 19-3-604(1)(c)(I). We therefore discern no error.

### III. Reasonable Efforts

¶ 12 Mother argues that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her and reunify her with the child. We disagree.

### A. Standard of Review and Applicable Law

¶ 13 Whether a department of social services satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error and review de novo its legal determination, based on those findings, that the department satisfied its reasonable efforts obligation. *Id.*

¶ 14    In deciding whether to terminate parental rights, the juvenile court must consider whether the county department of human services made reasonable efforts to rehabilitate the parent and reunite the parent with the child.  *See* §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.  The Colorado Children's Code defines "reasonable efforts" as the "exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114).  The Children's Code further provides that the reasonable efforts standard is satisfied if the department provides appropriate services in accordance with section 19-3-208.  § 19-1-103(114).

¶ 15    Section 19-3-208 requires departments to provide the following services when necessary and appropriate: screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services.  § 19-3-208(2)(b).  If additional funds are available, the department must also provide transportation to services "when other appropriate transportation is not available."  § 19-3-208(2)(d)(I).

¶ 16    In assessing the department's reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan. *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). In doing so, the court must consider the totality of the circumstances, accounting for everything provided to a parent to ensure the completion of the entire treatment plan. *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. Because a parent is ultimately responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), the court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts, *see People in Interest of A.V.*, 2012 COA 210, ¶ 12.

## B.    Analysis

¶ 17    In this case, the juvenile court found that the Department made reasonable efforts to provide mother with the services necessary for her to complete her treatment plan, but she did not reasonably comply with her plan. The record supports the court's findings. The Department provided mother with substance abuse

7

treatment services, family time services, and bus passes to access these services. But mother did not successfully comply with either the substance abuse component or the family time component of her treatment plan, as described above. Because the record supports the court's findings, we cannot disturb its decision.

¶ 18 Nevertheless, mother asserts that the Department failed to make reasonable efforts to provide her with transportation to her family time services. The record shows that the Department provided mother with bus passes throughout the case, and mother does not contend that the Department ever failed to do so. Instead, she submits that, even though she had transportation resources, she still struggled to attend family time because she had to ride multiple buses or trains to get there.

¶ 19 In mother's reply brief, she provided a map and bus schedules showing the difficulty of using public transportation to travel from mother's home in Denver to the parenting time centers in Lakewood, Greenwood Village, and Centennial. Mother asserts that the long bus rides and multiple transfers were difficult to manage,

¶ 20 Mother's appellate counsel pointed out that, at a family services meeting in February 2023, the caseworker indicated she

would investigate the possibility of providing mother with Lyft or Uber gift cards.

¶ 21   And at an April 10, 2023, hearing, the court addressed mother's continuing transportation challenges in the context of her travel to the site of her urinalysis tests.  The court indicated that the Department could "give [her] a pass/an Uber so that [she] can attend to those visits," but the court noted that, to provide the passes, the Department would need advance notice of mother's planned visits.  Following that hearing, on April 20, 2023, the court ordered the Department to "provide transportation for . . . [m]other to comply with her treatment plan[;] however, reasonable notice must be provided to the caseworker if transportation is requested."

¶ 22   Nothing in the record from April 2023 to March 2024 indicates that mother brought to the court's attention the Department's failure to provide her with Uber or Lyft passes.  And we see nothing in the record of the termination hearing where mother specifically raised that the Department failed to assist her with Uber or Lyft passes, even though the caseworker indicated at the February 2023 family services meeting that the Department would investigate such passes.  Therefore, on this record we cannot say the Department

9

failed to make reasonable efforts with respect to mother's asserted transportation challenges, as mother did not provide the juvenile court with an opportunity to address them. *See People in Interest of E.D.*, 2025 COA 11, ¶ 65 n.3 (when an argument raised in the juvenile court differs from the argument raised on appeal, the appellate court will generally decline to address the new argument).

¶ 23 Mother next argues that the Department failed to make reasonable efforts to contact relatives, inform maternal grandmother about assistance resources if she was a placement for the child, and place the child with maternal grandmother. But these are not services necessary for mother to complete her treatment plan. *See S.N-V.*, 300 P.3d at 915. Thus, the Department had no obligation under section 19-3-208 or section 19-3-604(2)(h) to do these things. *See People in Interest of B.H.*, 2021 CO 39, ¶ 79 (concluding that mailing family finding letters or exploring placement options "aren't services aimed at rehabilitating [the parent]," so they are not required for the department to meet its reasonable efforts obligation).

¶ 24 Regardless, we are not persuaded by mother's argument. In support of her assertion, she cites section 19-3-403, C.R.S. 2024,

which describes the required procedures at a temporary custody hearing. Section 19-3-403(3.6)(a)(I) requires that a "form affidavit and advisement" be available to a parent attending a temporary custody hearing. The affidavit requires, among other things, that the parent list the names of relatives. § 19-3-403(3.6)(a)(I)(B). A county department is then required to provide notice to the identified relatives, including information about "the state's entitlement plans." § 19-3-403(3.6)(a)(IV)(B).

¶ 25    We acknowledge that the record does not include a relative affidavit from mother. Because there is no indication that the Department had a relative affidavit, it could not send notice to relatives, as required by section 19-3-403.[1] Moreover, maternal grandmother specifically declined placement until very late in the

---

[1] Current law requires the Department to provide relatives and "identified kin" with notice that the child has been removed from the home and information about available placement options and assistance programs or services that support a child's out-of-home placement. § 19-3-403(3.6)(a)(IV)(A), (B), C.R.S. 2024. While these statutory provisions were in effect in August 2023 — so during the pendency of mother's case — they were not in effect at the time the Department placed the child with maternal great-aunt. And because mother did not complete the form affidavit described in section 19-3-403(3.6)(a)(1), the Department was not required to provide notice to maternal grandmother.

case, and neither mother nor maternal grandmother ever requested a court order to place the child with maternal grandmother.

¶ 26     Finally, mother submits that the Department failed to make reasonable efforts because it did not adequately explain to the child's placement the "features" of an allocation of parental responsibilities (APR). Again, this is not a service necessary for mother to complete her treatment plan or otherwise required by section 19-3-208. *See S.N-V.*, 300 P.3d at 915. Mother does not direct us to any authority that would require the Department to properly explain the features of an APR to satisfy its reasonable efforts obligation. We therefore discern no error.

## IV.     Less Drastic Alternative

¶ 27     Mother maintains that the juvenile court erred by rejecting a less drastic alternative to termination. We disagree.

### A.     Standard of Review and Applicable Law

¶ 28     We review a juvenile court's less drastic alternative findings for clear error. *People in Interest of E.W.*, 2022 COA 12, ¶ 34.

¶ 29     Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122

(Colo. 1986). When considering less drastic alternatives, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3). The court may also consider, among other things, whether (1) an ongoing relationship between the parent and child would be beneficial, *People in Interest of A.R.*, 2012 COA 195M, ¶ 38; (2) an APR provides adequate permanence and stability for the child, *T.E.M.*, 124 P.3d at 910-11; and (3) the placement prefers adoption over an APR, *S.N-V.*, 300 P.3d at 920.

¶ 30     A viable less drastic alternative must do more than adequately meet a child's needs; rather, it must be in the child's best interests. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. Therefore, if the juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. And under those circumstances, we must affirm the court's decision if its findings are supported by the record. *B.H.*, ¶ 81.

### B.     Analysis

¶ 31     The juvenile court found that there was no less drastic alternative to termination and that termination and adoption were

13

in the child's best interests. The court noted that the child's placement did not want to participate in an APR with mother. It also noted that, although maternal grandmother testified that she would accept an APR, she also testified that she could not be a placement until she retired. Finally, the court found that a less drastic alternative was not appropriate because (1) mother could not provide safe parenting within a reasonable time and (2) the child needed a safe, stable home that could only be achieved through an adoption.

¶ 32 The record supports the juvenile court's findings. After removal, the Department placed the child with maternal grandfather, but he could not keep the child in his care. Maternal grandmother (who was divorced from maternal grandfather) told the Department that she could not be a placement at that time. Mother then suggested M.F., a family friend, as a potential placement, and maternal grandmother contacted M.F. to see if she would be willing. M.F. agreed to the placement, and the Department placed the child with her in April 2022; the child remained in M.F.'s care for the rest of the case. M.F. testified at the termination hearing that she

14

wanted to adopt the child and did not want to participate in an APR.

¶ 33 Maternal grandmother testified that she could not care for the child until she retired in January 2025 (many months after her testimony) because she worked from home. Yet, she still reached out to the caseworker to inquire about placement once she discovered that the Department intended to move for termination. The caseworker testified that, when maternal grandmother contacted him, she said that she wanted to adopt the child. But at the termination hearing, maternal grandmother testified she would accept an APR, even though she conceded that she had never expressed her desire to do so before the termination hearing.

¶ 34 The caseworker opined that the child was attached to M.F. and that disrupting the child's placement at that point in the case would have negative impacts on her development. He also testified that there were no less drastic alternatives to termination, noting that (1) mother had not made progress on addressing the safety concerns for the child; (2) the child needed permanency that could only be achieved through adoption; (3) M.F. did not want to

participate in an APR; and (4) M.F. needed to have the discretion to determine what "potential parent contact looks like in the future."

¶ 35    The record therefore supports the juvenile court's decision to reject less drastic alternatives and enter termination. Nevertheless, mother asserts, for the following three reasons, that the court erred. We disagree with all three contentions.

¶ 36    First, mother asserts that the juvenile court could not properly evaluate less drastic alternatives because the Department failed to make reasonable efforts. This assertion fails because we rejected mother's reasonable efforts argument in Part III above.

¶ 37    Second, mother contends that the "juvenile court could find less drastic alternatives to termination existed without detailed APR terms." Specifically, she notes that the Department and guardian ad litem argued at the termination hearing that the court could not find that there was a less drastic alternative to termination "because no APR motion had been filed." But mother does not point to anything in the court's ruling suggesting that it relied on this argument when it rejected less drastic alternatives. Therefore, mother's contention is unavailing.

16

¶ 38    Third, mother argues that an APR was in the child's best interests for multiple reasons, including that the child had a bond with her, an ongoing relationship with her would be beneficial to the child, she could provide safe and appropriate parenting, she attended parenting time, the child was bonded with maternal grandmother, M.F. did not have the financial ability to care for the child as maternal grandmother had provided M.F. monetary assistance, and an APR is a valid form of permanency. To be sure, these are factors that a court may consider in deciding whether there is a viable less drastic alternative. *See People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo. App. 2009) (child's bond to caregiver); *People in Interest of D.L.C.*, 70 P.3d 584, 589 (Colo. App. 2003) (financial ability). The juvenile court considered some of the factors advanced by mother, as well as other factors, and it concluded that an APR was not appropriate. *See A.R.*, ¶ 38 (noting that the court "may consider various factors" in its analysis of less drastic alternatives). And the record supports its conclusion based on those factors. *See B.H.*, ¶ 80. Ultimately, mother's argument would require us to reweigh the evidence or substitute our

17

judgment for that of the juvenile court, which we cannot do.  *See*
*People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.

V.     Permanency Hearing Statute and Contested Placement

¶ 39     Mother asserts that the juvenile court erred by failing to
comply with the permanency hearing statute and place the child
with maternal grandmother.  We discern no error.

A.     Standard of Review

¶ 40     To the extent our analysis requires us to engage in statutory
interpretation, we do so de novo.  *People In Interest of A.C.*, 2022 CO
49, ¶ 10.

B.     Analysis

¶ 41     As relevant here, section 19-3-702(1)(a), C.R.S. 2024, requires
the juvenile court to conduct a permanency planning hearing "at
least every six months while the case remains open."  In this case,
the court conducted a permanency planning hearing at least every
six months until October 2023.  At the initial permanency planning
hearing and each hearing thereafter, the court adopted a
permanency goal of returning the child home.  *See* 19-3-702(4)(a)
(listing several permanency goals, including return home).  After the
October 2023 hearing, the court would have needed to hold another

18

permanency hearing by April 2024.  But the termination hearing fell within that timeframe, and the record does not show that the court held a separate permanency planning hearing during that time.

¶ 42    Mother asserts that, because the juvenile court did not hold another permanency planning hearing, the termination hearing must have been a joint termination and permanency planning hearing.  Indeed, although nothing in the record describes the hearings in March and May 2024 as permanency planning hearings, the court nevertheless entered written orders after those hearings maintaining the permanency goal of return home.  Thus, we reject mother's assertion that the court erred by failing to hold a permanency planning hearing within the required timeframe.

¶ 43    Mother also argues that the Department did not make reasonable efforts or submit a report as required by the permanency statute.  *See* § 19-3-702(3)(b), (4)(b)(I).  The permanency statute requires that the juvenile court find whether "reasonable efforts have been made to finalize the permanency goal." § 19-3-702(3)(b).  Because the permanency goal was to return home, the Department needed to make reasonable efforts to reunify the child with mother.  We concluded in Part III above that

19

the Department made these efforts. As for the reports required by the permanency statute, mother does not explain how the failure to submit such a report impacts the termination judgment.

¶ 44 Finally, we reject mother's assertion that the juvenile court erred by declining to place the child with maternal grandmother under section 19-3-702(6). We agree that the court could consider a placement change under section 19-3-702 at any time, and the twenty-day deadline in section 19-3-602(2), C.R.S. 2024, did not apply. But mother did not ask the court to change placement to maternal grandmother under section 19-3-702(6). *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 (noting that, in dependency or neglect case, appellate courts do not review unpreserved errors). At most, she asserted that the court should set a separate hearing to consider placement. This was not sufficient to preserve the issue for our review. *See S.Z.S.*, ¶ 21 (noting that, because the parent never raised the issue, "the juvenile court didn't make any specific findings . . . for us to review"). We therefore decline to address the merits of her argument.

## VI. Conclusion

¶ 45 The judgment is affirmed.

JUDGE LIPINSKY and JUDGE MOULTRIE concur.