25CA0332 Peo in Interest of PAL 08-07-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0332
Arapahoe County District Court No. 23JV426
Honorable Bonnie H. McLean, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of P.A.L., a Child,

and Concerning A.L.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Welling and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

---

Ron Carl, County Attorney, Kiley Schaumleffel, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Elizabeth A. McClintock, Office of Respondent Parents' Counsel, Colorado Springs, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, A.L. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with P.A.L. (the child).  We affirm.

## I.     Background

¶ 2     The Arapahoe County Department of Human Services (the Department) received a referral raising concerns that the child was born drug-exposed.  Because mother's toxicology test was negative, the Department agreed that the child would be discharged from the hospital to mother's care with a support plan in place.  But when mother later tested positive for methamphetamine and fentanyl, the Department enacted a safety plan and the child was placed with maternal grandmother.  After maternal grandmother became unwilling to supervise mother's visits or be considered a long-term placement option, the Department sought and was granted temporary custody.  The Department then filed a petition in dependency or neglect.  One month later, the child was placed in kinship foster care, where he remained for the duration of the case.

¶ 3     The juvenile court adjudicated the child dependent and neglected and adopted a treatment plan for mother.  Mother's treatment plan required that she (1) maintain contact with the

Department; (2) participate in family time; (3) obtain and maintain stable housing; (4) complete a substance abuse evaluation, participate in treatment, and cooperate with drug testing; (5) maintain employment or other source of legal income; (6) complete a mental health evaluation and comply with all treatment recommendations; and (7) complete a parenting education program to develop protective parenting skills.

¶ 4 The Department later moved to terminate mother's parental rights. Thirteen months after the petition was filed, the juvenile court held a contested hearing and granted the termination motion.

## II. Reasonable Efforts

¶ 5 Mother contends that the juvenile court erred by finding that the Department made reasonable efforts. We disagree.

### A. Applicable Law and Standard of Review

¶ 6 Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, a department must make reasonable efforts to rehabilitate the parent and reunify the family. *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2024; *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). "Reasonable efforts"

means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114), C.R.S. 2024.

¶ 7     Appropriate services provided in accordance with section 19-3-208, C.R.S. 2024, satisfy the reasonable efforts standard. § 19-1-103(114). Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time services; and placement services. § 19-3-208(2)(b). Other services — including transportation assistance, diagnostic and mental health services, and drug and alcohol treatment services — must be provided if the department has sufficient funding. § 19-3-208(2)(d).

¶ 8     In assessing a department's efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *S.N-V.*, 300 P.3d at 915, by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33. But the parent is ultimately

3

responsible for using those services to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

¶ 9    Whether a department satisfied its obligation to make reasonable efforts to rehabilitate a parent and reunify the family is a mixed question of law and fact. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo its legal determination whether a department satisfied its reasonable efforts obligation. *Id.*

### B.    Analysis

¶ 10    The juvenile court concluded that the Department made reasonable efforts to provide rehabilitative services to mother, but that the efforts were not successful. The record supports this conclusion.

¶ 11    The caseworker testified that she (1) provided bus passes; (2) personally drove mother to the home visit; (3) rescheduled drug tests for mother's convenience; (4) provided mother with an individualized family time coach; and (5) ensured the availability of approximately four different treatment providers during the case. In an effort to engage mother, the caseworker also traveled to

mother for their meetings, rescheduled meetings that mother cancelled or missed, and held monthly team meetings to discuss barriers and available resources. But in spite of these efforts, the caseworker observed that mother lacked follow-through. And concerns about mother's candor regarding her treatment and test results impeded everyone's ability to productively discuss the Department's concerns. The caseworker opined that there was nothing else the Department could have provided to mother to assist her in becoming successful with her treatment plan.

¶ 12 Nevertheless, mother asserts that the Department failed to make reasonable efforts by not assisting her with reliable transportation. She argues that the bus passes were insufficient because buses can be unreliable, especially in inclement weather. Mother testified that sometimes she "waited early at a bus stop for a bus not to show . . . and [it took] a little while to get to [her] stop." But mother did not present any evidence at the termination hearing that her lack of treatment plan compliance — such as missing numerous treatment sessions, the majority of her scheduled drug tests, and approximately half of her scheduled family time — was caused by late or cancelled buses. Mother asserts that the

Department should have provided her with scheduled rides or vouchers for ride share services. But she cites no law, and we are aware of none, that would require the Department to do so as part of its obligation to provide reasonable efforts under section 19-3-208.

¶ 13    Mother next argues that the Department failed to make reasonable efforts by not providing her with a cell phone plan. Mother asserts that, because her phone relied on wireless internet to take calls and send or receive text messages and emails, it impeded her ability to comply with the terms of her treatment plan. This argument is unsupported by the record. The caseworker testified that mother (1) usually responded to her messages within twenty-four to forty-eight hours; (2) communicated with her by phone if she had a question or concern; and (3) regularly attended the family team meetings. Contrary to mother's claims that phone issues impeded her ability to call in for her drug tests, the caseworker testified that mother "struggled with remembering to call in." Even so, if mother missed a call-in day, the caseworker offered to schedule an additional testing day. But mother also missed the rescheduled tests. *See J.C.R.*, 259 P.3d at 1285.

¶ 14      Based on the foregoing, we discern no error in the juvenile court's determination that the Department made reasonable efforts to rehabilitate mother and reunite her with the child.

### III.    Less Drastic Alternatives

¶ 15      Mother next contends that the juvenile court erred by finding that there were no less drastic alternatives to termination. We are not persuaded.

### A.    Applicable Law and Standard of Review

¶ 16      Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3); *People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004). A court may also consider, among other things, (1) whether an ongoing relationship with a parent would be beneficial to the child, which is influenced by a parent's ability to care for the child's needs, *People in Interest of A.R.*, 2012 COA 195M, ¶ 38; (2) whether the child is bonded with the parent, *see People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo.

App. 2009); and (3) whether an allocation of parental responsibilities (APR) provides adequate permanence and stability for the child, *People in Interest of T.E.M.*, 124 P.3d 905, 910 (Colo. App. 2005).

¶ 17    For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, it must be in the child's best interests. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. Therefore, if the juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32.

¶ 18    "We review a juvenile court's less drastic alternatives findings for clear error." *People in Interest of E.W.*, 2022 COA 12, ¶ 34. Thus, when a juvenile court considers less drastic alternatives but instead finds that termination is in the child's best interests, we are bound to affirm the decision so long as the record supports its findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

### B.    Analysis

¶ 19    The juvenile court found that there was no less drastic alternative to termination that would meet the child's physical,

emotional, and mental health needs. The court focused on (1) the length of the case and the child's out-of-home placement; (2) the inconsistent nature of mother's family time; (3) the placement of the child with his sibling; and (4) the potential trauma to the child if he was moved from his current placement "in order to maintain a possible APR."

¶ 20 The record supports these findings. The caseworker testified that mother missed about half of her family time during the case and never moved beyond supervised visits. During the visits mother often struggled to understand the child's developmental needs and the necessity to parent for the full two hours. *See A.R.*, ¶ 38. The caseworker opined that, given mother's substance abuse and inability to productively communicate, an APR was not appropriate or in the child's best interests. She ultimately believed the child needed the permanency and stability that only adoption could provide. *See J.C.R.*, 259 P.3d at 1285 ("Permanent placement is not a viable less drastic alternative to termination if the children need a stable, permanent home that can only be assured by adoption.").

¶ 21     Mother asserts that the Department failed to consider the possible placements listed on her relative resource affidavit.  The Department is obligated to investigate a "reasonable number" of placement options.  *D.B-J.*, 89 P.3d at 532.  Here, the caseworker attempted to seek out other relative placements as part of her diligent search.  These relatives included maternal grandmother and mother's half-sister, neither of whom were willing to be a placement for the child.  Mother's relative affidavit listed one additional person for placement consideration and, while we agree it would have been best practice for the Department to review mother's relative affidavit when considering and contacting potential placement options, mother's argument ignores the juvenile court's finding that changing the child's placement to any other individual, simply for the possibility of an APR, was not in his best interests.  In other words, even if the named individual on mother's relative affidavit was a viable placement option, the court found, with record support, that an APR was still not the best option for the child.  *See A.M.*, ¶ 32.

¶ 22 Because the record supports the juvenile court's finding that there was no less drastic alternative to termination, we cannot disturb it. *See B.H.,* ¶ 80.

IV.   Disposition

¶ 23 The judgment is affirmed.

JUDGE WELLING and JUDGE JOHNSON concur.