25CA0799 Peo in Interest of JG 10-23-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0799
Arapahoe County District Court No. 22JV280
Honorable Shay K. Whitaker, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Jy.G., H.M., Je.G., and I.G., Children,

and Concerning H.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

---

Ron Carl, County Attorney, Erinn Walz, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, H.M. (father) appeals the judgment terminating his parent-child legal relationships with Jy.G., H.M., Je.G., and I.G. (the children). We affirm.

## I.    Background

¶ 2    In May 2022, the Arapahoe County Department of Human Services received a report that the children's mother had been arrested for, among other things, driving while intoxicated. While mother was driving, the then-three-year-old and five-year-old children were unrestrained in the car's backseat. The Department later discovered that mother had left the two other children, who were six years old and eight years old, alone in a hotel room for most of that day. And father was incarcerated at the time.

¶ 3    Consequently, the juvenile court granted the Department's request for a verbal removal order, and all four children were placed in foster care. The Department then filed a petition in dependency and neglect.

¶ 4    Approximately ten months later, father admitted the allegations in the petition, and the juvenile court adjudicated the children dependent or neglected. Over the following months, father

began exercising unsupervised family time with the children and moved the juvenile court to order that the children be returned to him. After a contested hearing, the juvenile court denied father's motion, noting that the Department supported eventual reunification with father.

¶ 5 Thereafter, father did not return the children to their foster home after one of his visits. The juvenile court issued a bench warrant for father and an emergency pickup order for the children. The children were missing for three months before father dropped them off at their paternal grandmother's house in Louisiana, and she took them to a police station. The Department arranged for the children to be transported to Colorado, and they returned to foster care. However, father's whereabouts were unknown to the Department.

¶ 6 In June 2024, the juvenile court held a default dispositional hearing and adopted a treatment plan for father. About a month later, father was arrested in Louisiana and transported to Colorado, where he remained in custody until December 2024. Around that time, the Department moved to terminate father's parental rights.

In April 2025, the juvenile court held a contested hearing and granted the termination motion.

## II. Less Drastic Alternatives

¶ 7 Father's sole contention on appeal is that the juvenile court erred by finding that there were no less drastic alternatives to termination. Specifically, he argues that an allocation of parental responsibilities (APR) to the children's paternal grandmother was a viable less drastic alternative. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 8 The juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 9 The consideration and elimination of less drastic alternatives are implicit in the statutory criteria for termination. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 40. In considering less drastic alternatives, a juvenile court must prioritize the child's

3

physical, mental, and emotional conditions and needs. *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29. A juvenile court may also consider (1) whether an ongoing relationship with a parent would be beneficial to the child, which is influenced by a parent's fitness to care for the child's needs, *see People in Interest of A.R.*, 2012 COA 195M, ¶ 38; and (2) whether the child is bonded with the parent, *see People in Interest of N.D.V.*, 224 P.3d 410, 421 (Colo. App. 2009).

¶ 10 For a less drastic alternative to be viable, it must do more than adequately meet the child's needs; it must be in the child's best interests. *A.M.*, ¶ 27. Long-term or permanent placement with a family member, short of termination, may not be in the child's best interests if it does not provide the permanence that adoption would provide or otherwise meet the child's needs. *A.R.*, ¶ 41. If a juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the alternative and order termination. *A.M.*, ¶ 32.

¶ 11 "We review a juvenile court's less drastic alternatives findings for clear error." *People in Interest of E.W.*, 2022 COA 12, ¶ 34. Thus, when a juvenile court considers less drastic alternatives but

4

instead finds that termination is in the child's best interests, we are bound to affirm the decision if the record supports the court's findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

## B.     Analysis

¶ 12     The juvenile court considered less drastic alternatives to termination but found that none of them would meet the physical, emotional, and mental health needs of the children. Specifically, the court had "significant concerns about an APR" in part because father had violated its prior orders when he "abs[c]ond[ed]" with the children and took them out of the state for a significant period of time. The court noted that it had no information about "what was actually transpiring" when the children were missing, which led to concerns about their safety and father's protective parenting capacities.

¶ 13     The court also found that father had not seen the children since they returned to Colorado in October 2023 and that he had refused to engage in any treatment or services since his return to Colorado in August 2024. The court highlighted father's refusal to participate in child-parent psychotherapy — offered as a way to transition into family time with the children again. Thus, the court

concluded that termination, not an APR, was in the children's best interests.

¶ 14     The record supports the juvenile court's findings. Still, father argues that the juvenile court erred by ruling out an APR to paternal grandmother because (1) father had demonstrated a bond with the children, and (2) paternal grandmother had been approved as a placement, wanted custody of the children, and was willing to follow any court orders prohibiting father from having contact with the children. We reject these arguments.

¶ 15     First, we agree that the record indicates that father demonstrated a bond with the children, at least during the first year of the case. Specifically, the caseworker and her supervisor testified that until June 2023, father's family time was going well, and the Department was working toward reunifying the children with father. However, father's argument fails to account for the fact that by the time of the termination, he had not seen the children in approximately a year and a half. Moreover, a child's bond to a parent is just one factor for the court to consider in analyzing whether any less drastic alternatives are viable. *See N.D.V.*, 224 P.3d at 421. Here, the court heard the testimony about father's

bond with the children but still concluded that termination was in their best interests. We cannot reweigh the evidence. *See People in Interest of K.L.W.*, 2021 COA 56, ¶ 62.

¶ 16 Second, we agree that the record indicates that paternal grandmother had been approved as a placement and was willing to take the children and comply with any court orders about father's contact with them. But these facts, on their own, do not make the juvenile court's finding about less drastic alternatives erroneous. In fact, the question of whether a placement is appropriate is different from the question of whether a less drastic alternative exists. *See A.R.*, ¶ 44 (A less drastic alternative analysis does not require a court to choose between placement options, but rather, requires a court to consider "whether *any* placement, short of termination, would be in the child's best interests.").

¶ 17 Here, the juvenile court categorically rejected an APR because it was concerned that father would violate an APR order, potentially putting the children's safety or stability at risk. The record supports that finding. The caseworker, who testified as an expert in casework with an emphasis in child protection, opined that termination, not an APR, was in the children's best interests, even if

they were placed with paternal grandmother in the future. Moreover, the juvenile court stated that terminating father's rights did not preclude grandmother from being "seriously consider[ed]" as a placement option for the children. To that end, the caseworker confirmed that the Department was still actively considering paternal grandmother as a placement option or adoptive home.

¶ 18 Based on the foregoing, we discern no error in the juvenile court's finding that termination, not an APR, was in the children's best interests. *See B.H.,* ¶ 80.

### III. Disposition

¶ 19 The judgment is affirmed.

JUDGE BROWN AND JUDGE MEIRINK concur.